# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Yasmin Mohamed p/k/a Yasminah,<br><br>Plaintiff,<br><br>        v.<br><br><br>Abel Makkonen Tesfaye p/k/a<br>The Weeknd; Guillaume Emmanuel<br>de Homem-Christo and Thomas<br>Bangalter p/k/a Daft Punk; Martin<br>McKinney p/k/a Doc; Henry Walter<br>p/k/a Cirkut; Jason Quenneville p/k/a<br>DaHeala, XO Records, LLC; Republic<br>Records; Universal Music Group;<br>William Uschold p/k/a WILL U;<br>Tyrone Dangerfield p/k/a TABOO!!;<br>Squad Music Group; and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR**:<br><br>1. COPYRIGHT INFRINGEMENT;<br>2. BREACH OF CONTRACT;<br>3. BREACH OF FIDUCIARY DUTY;<br>4. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;<br>5. AN ACCOUNTING; AND<br>6. DECLARATORY RELIEF<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.      This action arises under the Copyright Laws of the United States (Title 17, U.S.C. §101 et seq.) and the statutory and common law of the State of New York.

2.      This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 in that this action involves claims arising under the Copyright Laws of the United States.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 in that the Defendants are subject to personal jurisdiction in that they transact substantial business within New York, New York and certain acts and omissions at issue took place in New York, New York.

## PARTIES

4. At all times mentioned herein, Plaintiff Yasmin Mohamed p/k/a "Yasminah" ("Plaintiff") was an individual residing in San Jose, California and the singer and songwriter of her original composition and sound recording entitled "Jewel of My Life" aka "Hooyo" ("Hooyo" or "Sound Recording/Composition")

5. At all times mentioned herein, Republic Records, a division of UMG Recordings, Inc., ("Universal") and a Delaware corporation with its headquarters in New York, New York, conducted business in New York, New York.

6. At all times mentioned herein, Defendant Abel Makkonen Tesfaye p/k/a and hereinafter, "The Weeknd," was an individual residing and doing business in New York, New York.

7. At all times mentioned herein, Defendants Guillaume Emmanuel de Homem-Christo and Thomas Bangalter p/k/a "Daft Punk" were individuals conducting business is New York, New York.

8. At all times mentioned herein, Defendant Martin McKinney p/k/a "Doc" was an individual conducting business in New York, New York.

9. At all times mentioned herein, Henry Walter p/k/a "Cirkut" was an individual conducting business in New York, New York.

10. At all times mentioned herein, Jason Quenneville p/k/a "DaHeala" was an individual conducting business in New York, New York.

11. At all times mentioned herein, XO Records, LLC was a Canadian company, conducting business in New York, New York. The defendants identified in pars. 5-11 shall be hereinafter referred to as The Weeknd Defendants.

12. At all times mentioned herein, William Uschold p/k/a "WILL U" ("Uschold") was an individual residing in Vallejo, California.

13. At all times mentioned herein, Tyrone Dangerfield p/k/a "TABOO!!" ("Dangerfield") was an individual residing in Oakland, California.

14. At all times mentioned herein, Squad Music Group was an entity, form unknown, conducting business in Vallejo, California.

15. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants. Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained.

16. As alleged herein, "Defendants" shall mean all named Defendants and all fictitiously named Defendants.

17. Plaintiff is informed and believes and on that basis alleges that Defendants at all times relative to this action, were the agents, servants, partners, joint venturers and employees of each of the other Defendants and in doing the acts alleged herein were acting with the knowledge and consent of each of the other Defendants in this action. Alternatively, at all times mentioned herein, each of the Defendants conspired with each other to commit the wrongful acts complained of herein. Although not all of the Defendants committed all of the acts of the conspiracy or were members of the conspiracy at all times during its existence, each Defendant knowingly performed one or more acts in direct furtherance of the objectives of the conspiracy. Therefore, each Defendant is liable for the acts of all of the other conspirators.

FACTUAL STATEMENT

18. Plaintiff is a Somali-American poet, singer, and songwriter.

19. In 2009, Plaintiff's music gained attention via the internet and her social media platforms. After hearing her music, Defendant music producers Uschold and Dangerfield contacted her to record her music.

20. Plaintiff recorded an album with Uschold and Dangerfield that contained a sound recording/composition that Plaintiff created as a co-author entitled "Hooyo" (the "Sound Recording/Composition"). Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's copyright registration for said work.

21. Uschold and Dangerfield signed Plaintiff to a record deal ("the Squad Contract") with their company, Squad Music Group. Attached hereto as **Exhibit B** is a true and accurate copy of the Squad Contract.

22. The Sound Recording/Composition was a hit and became very popular in the East African diaspora community, amassing thousands of plays (and manifestations of approbation, e.g., "likes") on the internet and even inspired a parody. Moreover, the Sound Recording/Composition was so well-known in the East African community, and with the public at large, that multiple publications and individuals published articles and posts about the striking similarities between the Sound Recording/Composition and the Weeknd sound recording composition at issue herein. Certain material from those publications and posts are set forth in paragraphs 27-31 hereinbelow.

23. Upon information and belief, The Weeknd, part of the East African ancestral community living in Canada and the United States[1] had access to and heard Plaintiff's Sound Recording/Composition.

---

[1] On information and belief it is alleged that The Weeknd has ties to this community and associates within that community, as reflected in his public statements, which include without limitation the following: (a) the Weeknd's Twitter account: "fuck miss my somalian goons #mobbingthesestreets i'm back bitch.." https://twitter.com/theweeknd/status/217831141149908992?lang=en; (b) the Weeknd's YouTube page for his song about Ethiopia: https://www.youtube.com/watch?v=vPp5Ty9EE6k.

24. The Weeknd Defendants copied quantitatively and qualitatively distinct, important, and recognizable portions of the sound recording/composition by recording and releasing on September 16, 2016, the Sound Recording/Composition, "Starboy" (hereinafter "Starboy" or the "Infringing Work"), with Daft Punk, XO Records, LLC as contained on an album released by Republic Records/Universal featuring The Weeknd, called "Starboy".

25. The Infringing Work is substantially similar to the Sound Recording/Composition, as set forth below.

26. The two works at issue employ a number of substantially similar elements and material, as set forth in the below, non-inclusive musical analysis:

    a. Hooyo is built on a two-measure melodic motif (the "Hook"), which repeats every two measures during Hooyo's verse. The Hook typically starts on the third beat, on the note E, and almost exclusively employs the notes E, D, and C. A transcribed exemplar of Hooyo's Hook, from measures 5-7 of Hooyo's first verse, is below:



    b. Starboy's hook is a virtually identical copy of Hooyo's Hook.. The material repeats every two measures during Starboy's eight-measure verse. Starboy's hook typically begins on the third beat, on the note E (and in the same octave), and almost



exclusively employs the notes E, D, and C. An exemplar of Starboy's Hook, from measures 5-7 of the first verse, is set forth below:

c.     The above exemplars, extracted from the same position in each song's respective first verse, are compared directly in the graphic below:



d.     Both Hooyo and Starboy employ 8-measure verses, each containing 4 iterations of the Hook. A transcription of both songs' first 8-measure verse is reproduced below, with brackets denoting the beginning of each iteration/repetition of the Hook:



e. Both songs are in the key of A-minor, and both songs feature a similar 8-measure harmonic pattern. This pattern begins on the tonic chord of A-minor (i) and descends, over 8 measures, to the dominant chord of E-major (V), resolving back to A-minor (i) at the beginning of the next verse.

f. Hooyo has a tempo of between 94 and 96 beats-per-minute. Starboy's tempo is between 92 and 94 beats-per-minute.

g. Hooyo employs a sparse, intimate orchestration of voice over acoustic guitar. Starboy begins with a similarly sparse orchestration of voice of acoustic piano.

h. The rhythmic elements (the "Beat") of both songs include a prominent "clap" on beats 2 and 4. Other elements of both songs' Beats are similar as well.

27. These and other similarities are apparent to both trained and untrained listeners. For instance, on December 16, 2016, an article in Tusmo Times[2] stated:

> "…On "Hooyo" she sings tribute to her mother's protection, sacrifice and perseverance that led her to safety. The song touched hearts and ears of global audience especially within the Somali community who went through similar journey. Now in 2016, Weeknd released a hit single "Starboy" … The song's musical arrangement has spurred a serious question behind its creativity and inspiration, whether "Starboy" was completely plagiarized from Yasminah's 2009 single "Hooyo" song. The extreme similarities between the songs can be indisputably identified by listeners who have heard both songs. Both the drum arrangement and instrumentals used in the song, to the flow and melody of the main

---

[2] Tusmo Times is independently operated and owned bilingual Somali and English Community News, Business and Arts serving the Somali American community in Minneapolis-St. Paul available on news stands and online.

verses in "Starboy" are synonymous to "Hooyo". A Comparison Video, released by youtuber "*IsTalkCheap*" details this through highlighting the two songs' striking similarities, which spurred comments by fans alike... In this case, what might have been the thought process for a major music star, The Weekend, to avoid due process and pirate another east african artist instead of giving her the shine she deserves?.." (Emphasis added.)

28. Further, on or about December 2016 Buzzfeed.com published an Article with these headlines:

- "Did The Weeknd's Starboy copy from Yasminah's 2009 single Hooyo?"

"Is There Copyright Infringement Behind The Weekend's New Single "Starboy"? stating:

> "Recent rumblings within the music industry and by fans alike have questioned the creativity and copyright infringement behind the Weeknd's new single…"

29. Another post states:

- "Starboy (Weeknd ft. Daft Punk) | Sounds Like | Hooyo (Yasminah)"[3]

30. And on Twitter.com:

- "The Weekend's new song #Starboy sounds so familiar to #Hooyo by Yasminah The melodies are almost identical!"[4]

31. And on youtube.com:

- "Inspiration? The Weeknd - Starboy ft. Daft Punk | SOUNDS VERY SIMILIAR COMPARE IT"[5]

---

[3] http://www.samethattune.com/starboy-weeknd-ft-daft-punk-sounds-hooyo-yasminah
[4] https://twitter.com/classifiedxs/status/786009054141382656
[5] https://www.youtube.com/watch?v=kFORFUjRA2E

- "Weeknd EXPOSED! Starboy Melody Stolen.  Weeknd needs to give credit where it truly belongs.

    This girl sang the song in 2009."[6]

- "…for a Daft Punk-produced song it doesn't sound very Daft Punk-y, does it? Maybe they were IN the studio to pick up a stapler on the same day Abel was, so they got a production credit?" [7]

- "Starboy" DAFT PUNK-ified

    "This one sounds much more like Daft Punk than the original."[8]

32. While the above articles do not include much in the way of legal analysis, they do make clear that reasonable lay listeners in the public found the material at issue to be substantially similar.

33. In 2017, Uschold and/or Dangerfield and/or Squad (the Squad Defendants) retained counsel ("Squad's Lawyer") for the purpose of seeking damages against, *inter alia,* The Weeknd for copyright infringement of the Sound Recording/Composition.

34. On September 15, 2017 Squad's Lawyer wrote to Plaintiff, Uschold and Dangerfield:

> *"Dear Clients:*
>
> *I just wanted to update you and share the current draft of the settlement agreement. Please review and let me know if you have questions or suggested edits. It's mostly standard, but I will be negotiating specifics. I'm available for a call as well."*

---

[6] https://www.youtube.com/watch?v=w3JyNCgnewM
[7] https://www.youtube.com/watch?v=EvB9mbxJQ5U
[8] https://www.youtube.com/watch?v=jpgFnSCvHJQ

9

35. When Plaintiff had questions regarding the recovery from the Infringing Work (including how settlement proceeds were to be split), Squad's Lawyer vaguely replied:

> *"Yes, you get an even split."*

Subsequently after Plaintiff repeated her questions, Squad's Lawyer later replied:

> *"Yasmin, I have not run any of the numbers and it is a little odd that you are pushing this issue so intently at this stage of the settlement process."*

36. Then after Plaintiff expressed concerns regarding the proposed settlement, Squad's Lawyer wrote, *inter alia,* to Plaintiff:

> *"You do not own this [Song]."*

37. On information and belief it is alleged that a sum certain was paid by the Weeknd, Daft Punk, Doc, Daheala, XO Records, LLC, Republic Records and/or Universal (collectively, the "Weeknd Defendants") to the Squad Defendants in settlement of, and in exchange for a release of, claims relevant to Plaintiff's song, and that such sum certain should have been tendered, at least in part, to Plaintiff. The Squad Defendants, however, failed to tender to Plaintiff any part of the settlement funds.

38. Thereafter, the Squad Defendants and the Weeknd struck Plaintiff's name and a line for Plaintiff's signature from a hastily negotiated settlement agreement ("Fraudulent Settlement Agreement") regarding the Infringing Work.

39. Since then, the Weeknd, Daft Punk, Doc, Daheala, XO Records, LLC, Republic Records and Universal (collectively, the "Weeknd Defendants") continue to exploit and receive monies for the Infringing Work in violation of Plaintiff's rights in the Sound Recording/Composition.

## FIRST CLAIM FOR RELIEF
### DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT
(Against the Weekend Defendants, and Each)

40. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

41. Plaintiff is the owner of no less than half of the copyright to the sound composition to the Sound Recording/Composition. She has submitted the work for registration with the U.S. Copyright Office, and complied with all formalities in so doing.

42. The Weeknd Defendants had access to the Sound Recording/Composition by virtue of Plaintiff's online publication and distribution, as well as her and the Sound Recording/Composition's popularity, specifically with the East African diaspora of which The Weeknd is connected. In addition, the striking similarity between the two songs establishes access in that The Weeknd's song could not have been created without access to Plaintiff's song.

43. The Weeknd Defendants copied the Sound Recording/Composition as embodied in the Infringing Work.

44. The Infringing Work is striking similar to the Sound Recording/Composition, which is sufficient to establish access.

45. Within the last three years, Defendants, and each of them, engaged in the unauthorized reproduction, distribution, public performance, licensing, display, and creation of the Infringing Work. The foregoing acts infringes Plaintiffs' rights under the Copyright Act.

46. On information and belief it is alleged that Defendants, and each of them, made copies of the Infringing Work and sold, distributed, performed, streamed, broadcast, licensed, and/or otherwise exploited the Infringing Work without Plaintiff's consent. On information and belief it is alleged that such exploitation included, without limitation, Defendants', and each of them, distributing and broadcasting the Infringing Work on Spotify, Tidal, Apple Music,

Amazon, and YouTube.

47. The Weekend Defendants did not receive permission from Plaintiff to interpolate or copy the Sound Recording/Composition. Yet, The Weeknd Defendants created an unauthorized copy and/or derivative work from Plaintiff's original material.

48. All of the elements of the Sound Recording/Composition copied by "Starboy" are original to the Sound Recording/Composition.

49. The Weeknd's conduct has at all times been willful, knowing and with disregard to Plaintiff's rights to the Sound Recording/Composition.

50. As a proximate cause of Defendant's wrongful conduct, Plaintiff has been irreparably harmed and has suffered actual damages.

51. Since the release of the Infringing Work, the Weekend Defendants have infringed the Plaintiff's copyright interest by participating and continuing to copy, reproduce, perform, distribute, manufacture, sell, market, exploit and promote the Infringing Work in the aforementioned acts and sharing in the proceeds therefrom.

SECOND CLAIM FOR RELIEF
(BREACH OF CONTRACT — Against Squad Defendants, and Each)

52. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

53. On or about May 9, 2009, Plaintiff, entered into the Squad Agreement with Squad.

54. Plaintiff performed all covenants, conditions and obligations required under the Agreement except as excused by Defendants' and their breach.

55. Squad Defendants breached the Agreement by engaging in the acts and omissions set forth hereinabove, including: failing to account to Plaintiff; making misrepresentations to Plaintiff regarding the Agreement; not paying Plaintiff monies due to Plaintiff from the Sound Recording/Composition; incurring excessive expenses and obligations on behalf of Plaintiff and

purporting to transfer rights to third party(s) in the Sound Recording/Composition which they did not own*;* Plaintiff has been damaged by said breach in an amount in excess of five million dollars ($5,000,000).

THIRD CLAIM FOR RELIEF
(FOR BREACH OF FIDUCIARY DUTY – Against Squad Defendants, and Each)

56. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

57. By virtue of the relationship between Plaintiff and the Squad Defendants as parties to the contract and the fact that Uschold and Dangerfield co-owned the Squad record label, as well co-composers/co-authors and co-owners of the Sound Recording/Composition, special circumstances exist giving rise to a fiduciary relationship between Plaintiff and the Squad Defendants.

58. By virtue thereof and Plaintiff's trust and confidence in the Squad Defendants, Squad Defendants had a duty to act with the highest degree of good faith, honesty, and fair dealing including, but not limited to, the duty not to self deal or take unfair advantage of a fiduciary.

59. Defendants have breached their fiduciary duties by engaging in the acts and omissions alleged hereinabove, including but not limited to failing to provide Plaintiffs with any profits or reimbursements as agreed, making material misrepresentations, granting rights to third parties to the Sound Recording/Composition that they did not have and diverting Plaintiffs' funds.

60. Such conduct was fraudulent, malicious, and oppressive because Defendants purposefully and intentionally deprived Plaintiffs of what she was to receive and as a result of the foregoing, Plaintiff has been damaged in an amount according to proof in excess of five million dollars ($5,000.000).

61. Such breaches of fiduciary duty were willful, wanton, and committed with malice, fraud and oppression warranting of the imposition of punitive and exemplary damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(FOR AIDING AND ABETTING OF BREACH FIDUCIARY DUTY –
Against The Weeknd Defendants, and Each)

62. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

63. The Weeknd Defendants aided and abetted and provided substantial assistance to the Squad Defendants including striking the Plaintiff's signature from the settlement agreement and deceiving the Squad Defendants into signing the same to breach their fiduciary duty to Plaintiff. The Weeknd Defendants furthered the conspiracy by engaging in overt acts in furtherance thereof with knowledge of the relationship between Plaintiff and the Squad Defendants, by lending aid and encouragement to one another, and by ratifying and adopting the wrongful acts of the other.

64. The Weeknd Defendant's overt acts which caused harm to Plaintiff and in furtherance of Squad Defendants' conduct in aiding and abetting the other Defendants include, but are not limited to: failing to pay Plaintiff and agreeing to remove Plaintiff from the settlement agreement.

65. As a direct and proximate result of the foregoing, Plaintiff has suffered injury and harm, including, but not limited to, loss of revenue, in amounts according to proof in excess of the minimum jurisdiction of this Court.

66. As a result of the Weekend Defendants' said malice, oppression and/or fraudulent conduct, Plaintiff is entitled to punitive damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
(FOR AN ACCOUNTING – Against all Defendants, and Each)

67. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

68. Plaintiff and Defendants are in a relationship where Defendants have control over the revenue which Plaintiff is entitled to including monies generated by the Plaintiff's Sound Recording/Composition and the Infringing Work. Also, Plaintiff is entitled to an accounting from the other joint authors and their licensees and from the exploitation of any and all derivative works.

69. Defendants have a duty to properly report, account for, and distribute Plaintiffs' monies, including royalties, licensing fees, and profits.

70. Plaintiff is entitled to be accounted to and paid her share of all revenues derived from the exploitation of any and all of her assets, specifically from the Sound Recording/Composition.

## SIXTH CLAIM FOR RELIEF
(FOR DECLARATORY RELIEF)

71. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

72. Plaintiff seeks a declaration of rights pursuant to 28 U.S.C. § 2201(a).

73. Plaintiff contends that she is a copyright claimant of the Sound Recording/Composition and that she is entitled to no less than 50% of the revenues derived from the Infringing Work (as well as the original Sound Recording/Composition). Plaintiff requests a judicial declaration of same.

74. Plaintiff further contends that the purported Squad Contract did not have the requisite language to convey any rights to the Squad Defendants to assert and/or settle any

claims as an agreement concerning royalties does not constitute a transfer of copyright ownership.

75. Assuming arguendo that the Squad Contract's language could be considered ambiguous (as to whether the copyright interest itself was transferred), the Squad Contract is to be construed in favor of the Plaintiff author retaining their copyright as settlement by administrators only involve agreements expressly providing for the right to settle.

76. Furthermore, section G of the Squad Agreement states:

"Artist and we agree to enter into a more formal "long form" agreement incorporating the terms set forth in Section B of this Agreement, together with all other standard terms and conditions contained in our exclusive recording and publishing agreements (including, without limitation, warranties, option "pick-up" dates, etc.), subject to good faith negotiation ("Definitive Agreements"). *However, unless and until such time as the Definitive Agreements shall have been executed by us and Artists, Section A of this letter agreement shall constitute a valid and binding agreement* between the parties hereto in connection with any recording and publishing agreement. (emphasis added).

77. Since no "long form" "Definitive Agreements" was ever consummated, if the Squad Contract is valid, by its own terms it is only valid as to Section A, which only relates to the 'Distribution Agreement" and does not convey any of Somalia's copyright rights. There are no provisions in Section A pertaining to the ownership and/or transfer of any rights to any sound recording/composition. Absent a long-form agreement, there is not a valid basis upon which Squad Defendants could claim any of Plaintiff's copyright interest in the composition **or** the sound recording for the work at issue.

78. Upon information and belief, defendants dispute that contention.

79. Such a declaration is necessary and appropriate because a substantial controversy exists between the parties having adverse legal interests as to the Infringing Work and it is of sufficient immediacy and reality to warrant the issuance of a declaratory judgement.

WHEREFORE, Plaintiffs respectfully requests that this Court enter a judgment in her favor against Defendants and for the following relief:

### ON THE FIRST CLAIM FOR RELIEF

80. Pursuant to 17 U.S.C. § 504(b), damages, including the substantial profits of Defendants, to be proven at trial or pursuant to 17 U.S.C. § 504(c), and actual damages, (e.g., royalties);

81. The maximum amount of statutory damages for each act of willful copyright infringement;

82. Royalties and other revenues and benefits that accrue from past, present, and future exploitation "Starboy"; and

83. A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act or in the alternative a running royalty paid on all exploitations of the Infringing Work commencing from the date of judgment and for all amounts not taken into consideration in the judgment.

ON THE SECOND CLAIM FOR RELIEF

84.     For damages in an amount according to proof in excess of five million dollars ($5,000,000.00).

ON THE THIRD CLAIM FOR RELIEF:

85.     For general, special, incidental, punitive and consequential damages in an amount according to proof in excess of five million dollars ($5,000,000.00).

ON THE FOURTH CLAIM FOR RELIEF:

86.     For damages in an amount according to proof in excess of five million dollars ($5,000,000);

87.     For punitive damages.

ON THE FIFTH CLAIM FOR RELIEF:

88.     For an accounting.

ON THE SIXTH CLAIM FOR RELIEF:

89.     For a declaration that Plaintiff is a copyright claimant and that Plaintiff is entitled to no less than 50% of the revenues derived from the Infringing Work as well as the original Sound Recording/Composition.

ON ALL CAUSES OF ACTION:

90.     For costs of suit incurred herein;

91.     For attorneys' fees;

92.     For such other and further relief as the Court deems just and proper.

93.     Pre-judgment and post-judgment interest costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

94.     Any and all other appropriate relief, at law or equity, to which Plaintiff may show she is entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: September 17, 2018                          Respectfully submitted,

                                                   By: */s/ Emily A. Danchuk*
                                                   Emily A. Danchuk, Esq.
                                                   Scott Alan Burroughs, Esq.
                                                   (*pro hac vice* application to be submitted)
                                                   DONIGER / BURROUGHS
                                                   231 Norman Avenue, Suite 413
                                                   Brooklyn, New York 11222
                                                   Telephone: (310) 590-1820
                                                   scott@donigerlawfirm.com
                                                   *-with-*
                                                   Steven T. Lowe, Esq.
                                                   steven@lowelaw.com
                                                   Kris S. LeFan, Esq.
                                                   kris@lowelaw.com
                                                   LOWE LAW